```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
```

**DAVID J. LOIACANO**                                    **CIVIL ACTION**

**VERSUS**                                               **NO. 14-1750**

**DISA GLOBAL SOLUTIONS, INC., ET AL.**                  **SECTION "B"(2)**

## ORDER AND REASONS

Before the Court is DISA Inc.'s ("Defendant" or "DISA") Motion for Summary Judgment. (Rec. Doc. No. 42). DISA seeks dismissal of all claims against it based upon the contention that Plaintiff has produced no evidence of DISA's negligence. Plaintiff filed an opposition to the Motion. (Rec. Doc. No. 73). In his opposition, Plaintiff relies on expert testimony to assert that DISA's failure to inquire about other medications taken caused Plaintiff to be terminated by his employer. DISA then filed a Reply to Plaintiff's opposition, urging the Court to sanction the Plaintiff and his expert "for their efforts to mislead this Court into accepting testimony that is irrelevant and presented in bad faith." (Rec. Doc. No. 76). Also pending before the Court is DISA's Motion in Limine to Exclude Evidence. (Rec. Doc. No. 49).

    **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

    **IT IS FURTHER ORDERED** that Defendant's Motion in Limine is **DISMISSED AS MOOT**.

1

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, David J. Loiacano, filed the instant suit against DISA, Psychemedics Corporation ("Psychemedics"), and Nsuela R. Mukana, M.D. on August 1, 2014. Loiacano, a Louisiana resident, invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. Section 1332. (Rec. Doc. No. 1). Plaintiff claims that he was terminated by his employer of 18 years, Valero Refining Company, as a result of the unreasonable and unreliable drug screening procedures used by Defendants. Furthermore, Plaintiff contends that Defendants' failure to review or request information regarding his medical history contributed to the failed drug test and his subsequent termination.

DISA is a nationally certified corporation in the business of administering drug and alcohol screenings for its clients. DISA contracts with companies to provide them with third-party administrative services for drug and alcohol screenings of employees. Generally, DISA's role in the drug-screening process consists of collecting the hair or urine, sending the specimen to the laboratory along with documentation reflecting chain of custody, receiving the test results from the testing laboratory, and, if the specimen tests positive for the presence of a specific drug, confirming with the donor that there are no legitimate reasons for the donor's use of the drug, and, finally, reporting the test results to the designated employer representative.

Psychemedics is a nationally certified and licensed drug-testing laboratory that performs toxicology testing for Valero employees.

On January 6, 2014, Mr. Loiacano was instructed by his supervisor to report for a random drug test. Mr. Harold Williams, an employee of DISA, took a chest hair sample from Mr. Loiacano. The sample was placed in an aluminum pouch, which was then placed into a Sample Acquisition Card. The card was then sealed with evidence tape and signed by Mr. Loiacano. Mr. Loiacano testified via deposition that he had no objection to the manner in which Mr. Williams collected his sample, and that he had no doubt that it was his hair placed in the aluminum pouch. The hair sample was then tested by Psychemedics.

Psychemedics first conducted a screening process using an immunoassay test. The screening of Mr. Loiacano's sample came up positive for Carboxy-THC—a metabolite that is formed when marijuana is ingested. Because the screening was reported as a "presumptive positive," Psychemedics then employed a second test. Psychemedics used GC/MS/MS equipment to perform a gas chromatography and mass spectrometry test. This subsequent test confirmed the positive screening result.

On January 10, 2014, Mr. Loiacano received a telephone call from Dr. Mukana who informed him that his hair sample had tested positive for marijuana. When Mr. Loiacano told Dr. Mukana that he did not use marijuana, she recommended that he contact Valero's

3

Human Resources Department. After speaking with members of Valero's HR Department, Mr. Loiacano's original hair sample was retested using part of the original split sample. This second test also came back positive for marijuana. Mr. Loiacano then had separate tests done at his own expense. Both of those tests—one a urinalysis and one a hair sample test—came back negative.

On October 16, 2014, the Court granted Defendant Mukana's Motions to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure and for Failure to State a Claim under Rule 12(b)(6). (Rec. Doc. No. 25). Both DISA and Psychemedics filed Motions for Summary Judgment. (Rec. Doc. Nos. 36 & 42). The Court originally granted Psychemedics's Motion for Summary Judgment as unopposed (Rec. Doc. No. 41), but later granted a Motion for Reconsideration and a Motion to Extend Deadline to File an Opposition. (Rec. Doc. No. 54). Since that point, Plaintiff has repeatedly sought to continue proceedings and extend deadlines for various reasons.

On October 1, 2015 this Court conducted a telephone status conference with all parties' counsel. Pursuant to that conference, it was ordered that trial be continued pending the outcome of the summary judgment motions. Plaintiff was given one week to respond to Psychemedics's Motion and just over four weeks to obtain an expert and respond to DISA's Motion. Plaintiff failed to timely respond to Psychemedics's Motion for Summary Judgment, instead

4

moving to dismiss them as a party. That pending motion will be resolved along with Psychemedics's Motion to Fix Attorney's Fees. Plaintiff timely filed a response to DISA's Motion, meaning only DISA's summary judgment motion requires resolution.

## II. THE PARTIES' CONTENTIONS

DISA's Motion for Summary Judgment contends that Plaintiff has no evidence of negligence, making summary judgment appropriate. Loiacano's Response Memorandum presents the expert testimony of Dr. Edward G. Brown. In attempting to raise a genuine issue of material fact regarding negligence, Plaintiff relies on Dr. Brown's assertion that the steroid Versed (which Loiacano received two injections of for joint issues) has the same mass as THC Metabolite. Loiacano presumably takes this to mean that Versed could have caused a false-positive, and thus DISA's failure to question Mr. Loiacano about other medications led to the lab overlooking the possibility of a false-positive and Mr. Loiacano's ultimate termination. In reply, DISA contends that the scientifically-flawed and immaterial testimony of Dr. Brown does not create a fact issues sufficient to prevent summary judgment.

## III. LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 56, "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

If and when the movant carries this burden, the non-movant must then go beyond the pleadings and other evidence to establish a genuine issue.  *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

**a. Loiacano's Negligence Claim**

In a negligence action, "the plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence." *Hanks v. Entergy Corp.*, 944 So. 2d 564, 578 (La. 2006). "In order to determine whether a Plaintiff should prevail on a negligence claim, Louisiana courts employ a duty-risk analysis," which involves five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Long v. State ex rel. Dept. of Transp. And Dev.*, 916 So. 2d 87, 101 (La. 2005). As Plaintiff would bear the burden of proof at trial, and Defendant's Motion for Summary Judgment has pointed to a lack of evidence with respect to each element of negligence, Plaintiff now bears the burden of presenting competent summary judgment proof that there is a genuine issue of material fact warranting trial.

    *1. The Duty Element*

Plaintiff contends that DISA, as the party responsible for collecting the hair specimen, had the following duties: (1) to

transfer the specimen and ensure proper chain of custody; (2) to report the positive result to a qualified medical review officer ("MRO"); and (3) to ensure that the MRO contacted Mr. Loiacano to rule out possible alternate medical explanations for the positive test. (Rec. Doc. No. 73 at 2). Plaintiff's opposition focuses on this third alleged duty—the MRO's obligation to contact him to rule out alternate medical explanations.

Plaintiff identifies two sources as the origin of the MRO's duty to investigate—L<small>A</small> R<small>EV</small>. S<small>TAT</small>. A<small>NN</small>. § 49:1007 and the National Institute on Drug Abuse ("NIDA") Guidelines. Plaintiff asserts that, pursuant to § 49:1007, the "MRO shall contact the individual who submitted the specimen as outlined in the NIDA guidelines, before making a final decision to verify a positive result or report that result to the employer." (Rec. Doc. No. 73 at 2). However, Plaintiff's counsel blatantly ignores the fact that § 1007 was repealed by the legislature over ten years ago. L<small>A</small> R<small>EV</small>. S<small>TAT</small>. A<small>NN</small>. §49:1007 (repealed by Acts 2004, No. 901, §2, eff. July 12, 2004). Other than outdated statutes, Plaintiff provides no authority for the assertion that Louisiana law requires drug testing to be in accordance with the NIDA guidelines. Moreover, § 1.1 specifically notes the guidelines' applicability to federal agencies only. 59 FR 29908-01 § 1.1. Therefore, Plaintiff has failed to adequately identify the duty owed by DISA to Mr.

8

Loiacano. Nevertheless, assuming *arguendo* that DISA did owe Mr. Loiacano a duty to investigate in accordance with the NIDA guidelines or another similar law, Plaintiff has also failed to present sufficient evidence of breach and causation.

   *2. The Breach and Causation Elements*

   Plaintiff's opposition to the summary judgment motion cites § 2.6 of the NIDA Guidelines to demonstrate DISA's alleged breach. Section 2.6 provides:

> The role of the MRO is to review and interpret positive test results obtained through the agency's testing program. In carrying out this responsibility, the MRO shall examine alternate medical explanations for any positive test result. This action *could include* conducting a medical interview with the donor, review of the donor's medical history, or review of any other relevant biomedical factors. The MRO shall review all medical records made available by the donor when a confirmed positive test could have resulted from legally prescribed medication.

59 FR 29908-01 §2.6 (emphasis added). Plaintiff seemingly cites this provision to argue that DISA breached its alleged duty by not asking Mr. Loiacano about any other medications he had taken.

   However, the above-cited provision does not stand for proposition that an MRO must ask the donor about other medications. It simply requires that the MRO examine alternate medical explanations and review medical records made available by the

donor. Conducting a medical interview with the donor is simply one potential, non-required method for the MRO to examine alternate medical explanations. Therefore, the MRO's alleged failure to ask Mr. Loiacano about other medications would not qualify as a breach if the MRO did not believe another medication could have caused the positive result. Thus, the primary issue here is whether another drug could have caused a false-positive.

DISA's Motion for Summary Judgment relies on the testimony of two experts. The first, Dr. Barry Sachs, is a certified MRO retained by DISA. In the "Statement of Dr. Barry Sachs, D.O.," Dr. Sachs states that "the analysis of a donor's specimen will not yield a nonnegative or positive result for the presence of marijuana unless the donor has inhaled or ingested marijuana." (Rec. Doc. No. 42-3 at 1). Further, Dr. Sachs asserts that, based on a review of the drugs reportedly taken by Mr. Loiacano in the month prior to his drug-test (including steroids and an unnamed drug for treatment of inflammation), "those drugs could not have caused Mr. Loiacano's hair sample to trigger a positive result on a hair test." (Rec. Doc. No. 42-3 at 3).

DISA also adopts the opinions of Dr. Carl M. Selavka, the expert retained by Psychemedics for its summary judgment motion. Dr. Selavka stated that "[t]he presence of the unique carboxy-THC metabolite could have been caused only by ingestion of the

10

hallucinogen THC (found in Marijuana) on multiple occasions." (Rec. Doc. No. 36-5 at 3). Additionally, Dr. Selavka notes that though there are "pharmaceutical products which contain THC," they require a valid prescription. (Rec. Doc. No. 36-5 at 4) "Further, there are no known medications (such as steroids or growth hormones) that cause endogenous creation of THC, and no other drugs that are metabolized to form this hallucinogen or its unique metabolite." (Rec. Doc. No. 36-5 at 4). Therefore, according to both experts cited by DISA, the drugs reportedly taken by Mr. Loiacano could not have led to a false-positive, and only the ingestion of the hallucinogen THC found in marijuana could have produced the positive result.

In response, Plaintiff offers the expert report of Dr. Edward G. Brown, who has a doctorate in Chemistry and over twenty years of laboratory experience in organic chemistry. (Rec. Doc. No. 73-4 at 1). Dr. Brown asserts that Versed—the steroid Mr. Loiacano received for joint issues—"is a chemical that can be hydrolyzed to give a hydrolysis product that has a mass of 344 amu[, which] is the same mass as is found for the THC metabolite that is the basis of a positive test for THC when tested by GCMS." (Rec. Doc. No. 73-4 at 1). Accordingly, Dr. Brown asserts that "it is possible that this metabolite of Versed is the actual compound that was incorporated into the hair sample . . . and that no THC metabolite

11

was present in the hair sample." (Rec. Doc. No. 73-4 at 1). Dr. Brown does not address the contentions of Dr. Sachs and Dr. Selavka that none of the drugs taken by Mr. Loiacano could have caused a false-positive. Moreover, Dr. Brown does not contend that the steroid taken by Mr. Loiacano is one of the few prescription drugs mentioned by Dr. Selavka that contains THC. Rather, Dr. Brown simply provides this Court with far-fetched possibilities for why Mr. Loiacano's sample tested positive for marijuana.

He testifies that Versed *could be* hydrolyzed to the same weight as the metabolite found in the drug screening, that it is *possible* the Versed was the actual compound in the hair sample, and that it is *possible* that no THC was present in the hair sample. However, Dr. Brown does not claim that the Versed was actually in the hair sample, or that it actually hydrolyzed at the same mass as the compound found in the hair sample. Thus, he provides no reasonable basis to believe that his far-fetched hypothetical actually took place. Furthermore, he provides no scientific basis for countering the assertions of the other two experts that such a drug could not lead to a false-positive. Instead, he offers the very unscientific conclusion that *if* the Versed was the same weight as the substance found in the hair sample, then it is *possible* that it would be confused for THC.

Due to the speculative nature of Dr. Brown's findings (not to mention the scientific unreliability of his assertions), a reasonable jury could not find for Plaintiff based on his testimony. Thus, no genuine issue of material fact exists. *See Anderson*, 477 U.S. at 248 (noting that a genuine issue of material fact exists when a reasonable jury could return a verdict for the nonmoving party); *Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion."). As there is no genuine issue of material fact concerning whether Versed or any other legal drug taken by Mr. Loiacano could cause a false-positive, summary judgment is proper.

## IV. Conclusion

In light of the foregoing,

**IT IS ORDERED** that DISA's Motion for Summary Judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that DISA's Motion in Limine is **DISMISSED AS MOOT.**

New Orleans, Louisiana, this 23rd day of November, 2015.

UNITED STATES DISTRICT JUDGE